**UNITED STATES of America,**
**Appellee,**

v.

**Joseph SERAO, Charles Cafaro and Ben-**
**jamin Genetempo, Appellants.**

**No. 12, Docket 30548.**

United States Court of Appeals
Second Circuit.

Argued Sept. 19, 1966.

Decided Oct. 20, 1966.

See also D.C., 223 F.Supp. 607.

———◆———

Daniel R. Murdock, Michael W. Mitchell, Asst. U. S. Attys., Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, for appellee.

Albert J. Krieger, Robert Kasanof, New York City, for appellants.

Before LUMBARD, Chief Judge, and WATERMAN and ANDERSON, Circuit Judges.

WATERMAN, Circuit Judge.

Appellants Serao, Cafaro, and Genetempo appeal from judgments of conviction entered against them after a jury returned verdicts that they were "wilfully guilty" of wilful failure to pay a special tax imposed on persons engaged in receiving wagers on behalf of one engaged in the business of accepting wagers, 26 U.S.C. §§ 4411, 4401, and wilful failure to register as required by 26 U.S.C. §§ 4412, 7203.

Appellants were involved in a bookmaking operation by which bettors made wagers over the telephone. The telephones of the bookmakers, the "wire room," were located at three New York City apartments, Apt. 11 at 329 W. 89th, 3B at 261 W. 90th, and 1AA at 255 W. 93rd Streets. The record-keeping part of the business was carried on in a fourth apartment, Apt. B at 327 W. 87th Street, the "tally room," which contained no telephone. Special agents of the Internal Revenue Service, after placing bets with Serao in person, called them in to telephones located in the three "wire room" apartments, whose numbers Serao gave them. The appellants were observed on different occasions going to and departing from the four apartments. On March 5, 1963, Serao was observed walking from the W. 93rd Street apartment to the W. 87th Street apartment. On March 11, Genetempo and Cafaro (twice) were seen entering the W. 87th Street apartment; on his second trip Cafaro was seen carrying a brown paper bag. On March 13, Genetempo was seen leaving and later reentering the W. 87th Street apartment; and still later Cafaro arrived there carrying a brown paper bag. On March 14, Genetempo was observed leaving and reentering the W. 87th Street apartment and Serao was seen to leave the W. 90th Street apartment, to drop a brown paper bag containing gambling paraphernalia into a trash can, and later to go into the W. 87th Street apartment. On March 16 and 18, Serao was watched while entering the W. 90th Street apartment. On March 19 Serao and Genetempo were seen together at the W. 87th Street apartment. Under fictitious names the W. 93rd Street apartment and the W. 87th Street apartment were leased by Cafaro and Genetempo respectively.

Warrants were thereafter obtained to search the four apartments for gambling paraphernalia and to arrest Serao, who was known to the government agents as Joe Carroll. The apartments were searched and a sizeable amount of gambling paraphernalia was seized.

■ All appellants challenge the constitutionality of the statutes under which they were convicted. We rejected such attacks in United States v. Costello, 352 F.2d 848 (2 Cir. 1965), cert. granted, 383 U.S. 942, 86 S.Ct. 1195, 16 L.Ed. 2d 205 (1966), and United States v. Conti, 361 F.2d 153 (2 Cir. 1966), and we likewise reject this one. This is the only contention advanced by appellant Serao, and his conviction is affirmed. We now discuss other contentions advanced by appellants Cafaro and Genetempo.

Genetempo and Cafaro challenge the propriety of the issuance on March 21, 1963 of the search warrant authorizing a search of the W. 87th Street apartment. They each claim that the supporting affidavit of the special agent who ap-

plied for the warrants was insufficient. The affidavit is set forth herein in full:

### AFFIDAVIT FOR SEARCH WARRANT

BEFORE HON. FRANK R. ABBOTT, U. S. Courthouse, Foley Sq., New York, N. Y.

The undersigned being duly sworn deposes and says:

That he (has reason to believe) that (on the premises known as) Apt. B, 327 West 87th Street, New York, New York in the Southern District of New York, there is now being concealed certain property, namely gambling paraphernalia, including but not limited to horse betting slips, baseball and basket ball slips, other sporting slips and money, which are being used as means of committing a criminal offense, to wit, the business of accepting and receiving wagers, in violation of 26 U.S.C. §§ 4401, 4411, 4412 and 7272,

And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: testimony of Special Agents of the Internal Revenue Service: 1. Who have placed wagers by telephone at 3 different locations hereinafter referred to as wirerooms, with an individual known as Joe Carroll. 2. Who observed said Joe Carroll on 4 occasions proceeding from the aforesaid wirerooms to the premises at 327 West 87th St. 3. Who observed 2 unknown individuals leaving 2 different wirerooms premises and who were on several occasions observed entering the premises at 327 West 87th St. 4. That Joe Carroll was observed inside Apt. B at 327 West 87th St. 5. That a search of the records of the Internal Revenue Service reveal that the said Joe Carroll has not paid the special tax imposed by 26 U.S.C. § 4411.

/s/ DAVID A. OSTRAGER
*Special Agent*

Sworn to before me, and subscribed in my presence, March 21, 1963.

/s/ FRANK R. ABBOTT
*United States Commissioner*

Appellants claim that this affidavit contains no basis for concluding that the visits to this apartment by "Carroll" and the others were not for innocent purposes unrelated to the activities at the other apartments. They also claim that the location of the wirerooms, the numbers and dates of bets placed at each, and the dates upon which the surveillance of the appellants took place should have been specified in the affidavit.

Appellants' challenge to the adequacy of the affidavit might perhaps have some validity if the application to search the W. 87th Street apartment had been the only application in this matter presented at this time to the U. S. Commissioner, but under the circumstances of the present case there is no merit whatever to appellants' claims. On the same day that this application was made, the same special agent presented to the same U. S. Commissioner applications for warrants to search the three "wireroom" apartments and to arrest Joe Carroll. These four other warrants were issued and their issuance is not challenged here. The U. S. Commissioner in issuing the challenged warrant could surely consider the facts he contemporaneously learned from the affidavits presented to him in support of these other applications, all of which contained references to Joe Carroll and to the bookmaking operation. See United States v. Markis, 352 F.2d 860, 864 (2 Cir. 1965). Even if it be assumed that the so-called essential facts that appellants claim are missing from the challenged affidavit are wanting, one easily infers from the affidavit, standing alone, that the Commissioner had probable cause to believe that Joe Carroll's trips and those of the other two individuals from the wirerooms to the W. 87th Street apartment bore a direct relationship to the wireroom activities. And, most assuredly, the Commissioner, in making his independent judgment as to the sufficiency of the affidavit submitted in support of the application to search the suspected W. 87th Street apartment, could quite reasonably infer that very likely in this

apartment was that part of the appellants' operation that was being conducted away from the wirerooms. It would be hypertechnical for the Commissioner not to act upon an entire picture disclosed to him in interrelated affidavits presented to him on the same day. And, as the United States Supreme Court admonished in United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965), "the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner."

Appellant Cafaro claims his rights under the Fifth and Sixth Amendments were violated by the Government's introduction into evidence of a handwriting sample procured from him after his arraignment. The sample was one of two handwriting specimens used by the Government as a standard for comparing Cafaro's handwriting with the handwriting on the gambling records seized.

The sample was obtained when the Internal Revenue Service began a routine investigation of Cafaro's income tax returns after his arrest in this case on March 22, 1963. As part of this investigation, the Service sent a form to Cafaro on April 19, 1963, after the Service was unable to find that Cafaro had filed a federal income tax return for the calendar year 1961 in either the Manhattan District or the Brooklyn District. The form requested that an explanation be made on the back side of it, and, in his own handwriting, Cafaro wrote such an explanation. Cafaro was not required to write an answer; his voluntary reply could have been typed, written by someone else for him, or he could have made no answer at all.

▆▆▆ Aside from the fact that Cafaro was under no compulsion to give the handwriting sample, he has no claim that his constitutional rights have been infringed. The Supreme Court in Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) limited the Fifth Amendment privilege to evidence of a testimonial or communicative nature. While Cafaro's

writing was communicative for another purpose it was used here merely as a handwriting standard for identification, not to communicate any information related to the issues being tried. Obviously, there is no merit to the claim that a constitutional right of Cafaro was infringed by this voluntary act of his. Even identification procedures requiring fingerprinting or the giving of blood samples do not infringe. The Court noted in Schmerber, supra at 764, 86 S.Ct. at 1832, that "both federal and state courts have usually held that [the privilege against self-incrimination] offers no protection against compulsion * * * to write * * * for identification." As Cafaro was deprived of no rights under the Fifth Amendment, presence of his counsel would have availed him nothing. He therefore has no Sixth Amendment claim. Schmerber v. State of California, supra at 765–766, 86 S.Ct. 1826.

▆▆ Appellant Genetempo claims that the evidence was insufficient to sustain his conviction because it does not show that he performed other than mere ministerial or clerical duties. See United States v. Calamaro, 354 U.S. 351, 77 S.Ct. 1138, 1 L.Ed.2d 1394 (1957). We find no merit in this contention. The evidence is clearly sufficient to allow a finding that he performed more than a mere ministerial or clerical function. In fact, it would support a finding that he was supervising the whole operation. By the nature of the bookmaking operation the apartment which Genetempo leased under a false name and which he was often observed entering and leaving was the center of the operation. The wagers received at the various wirerooms were taken to this "tally room" to be recorded. Several hundred of the summary sheets reflecting the credit of the bettors and the earnings of the operation seized at the tally room were in Genetempo's handwriting as were also a number of bet slips and even a summary sheet seized at the W. 93rd Street apartment.

The convictions of all three appellants are affirmed.