**UNITED STATES of America,
Plaintiff,**

v.

**Joseph M. DONLON, Defendant.**

**Crim. A. No. 2174.**

United States District Court,
D. Delaware.

Dec. 3, 1971.

F. L. Peter Stone, U. S. Atty., Wilmington, Del., for plaintiff.

Alfred J. Lindh, of Lindh & Biden, Wilmington, Del., for defendant.

## OPINION

**LAYTON, District Judge.**

Joseph M. Donlon has moved to suppress evidence used in obtaining an indictment against him for violating and conspiring to violate Delaware and Federal Statutes regulating gambling activities.[1] The evidence is based upon two distinct sources. The first source is a wiretap of the phone used by Henry P. Gibbons, and the second source is a search of Donlon's home at 1 Eberly Drive, Chapel Hill, Newark, Delaware.

The wiretap was authorized by a judge of this Court on July 21, 1971, for a period of up to ten days, and was thereafter extended for two additional days, on July 30, 1971. On the basis of information obtained from the wiretap, coupled with general assertions about the habits of gamblers, a search warrant was issued for Donlon's home. This search turned up many items, including guns, cash, papers, and addresses.[2]

Prior to his indictment, and before he was either arrested or charged, Donlon moved to suppress and return the evidence in question pursuant to F.R.Cr.P. 41(e), based on three grounds: (1) The telephone conversations were illegally "seized" because the wiretap statute [18 U.S.C. §§ 2517 and 2518(1)–(6)] was unconstitutional; (2) thus, the evidence seized in Donlon's home was tainted because seized pursuant to information obtained under an unconstitutional statute; and (3) such evidence was seized pursuant to a search warrant based upon allegations insufficient to constitute probable cause.

The motion to suppress was denied in Donlon v. United States,[3] where I held that, based upon my decision in United States v. Perillo,[4] the above cited sections of the wiretap statute were constitutional. This disposed of the first two grounds of defendant's argument, and a decision on the third point was deferred because it was premature. Donlon now having been indicted, the question whether the allegations in the affidavit underlying the issuance of the search warrant in this case constituted probable cause is properly before me for decision.

The Fourth Amendment requires that prior to the issuance of a search warrant, a magistrate must find that probable cause to search a specific place exists:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause supported by oath or affirmation, and particularly describing the places to be searched, and the persons or things to be seized." [5]

---

1. The statutes included are 11 Del.C. §§ 661, 662, 663, 669, and 670A.; and 18 U.S.C. § 1955(a).

2. The items seized were a 3″ x 3″ piece of paper from the lower left hand drawer of a desk in the front den; one twenty-five caliber Fabrique National D'aume Guerre Merstal Belgique taken from a closet in the front den, Serial #936528; one twenty-five caliber Tital, Serial #B73657, taken from the same closet; one partial box of sixteen gauge Remington shotgun shells from the closet; one Sears, Roebuck & Co. sixteen gauge shotgun from the closet; four sheets of paper containing names and numbers taken from the desk; three sheets of paper and a brown envelope taken from the desk; three address books taken from an end table; two boxes of twenty-five caliber ammunition taken from a bureau; one address book taken from a bureau; four telephones.

3. 331 F.Supp. 979 (D.Del.1971).

4. United States v. Perillo, 333 F.Supp. 914 (D.Del.1971).

5. Rule 41(c) of the Federal Rules of Criminal Procedure is entirely consistent with the Fourth Amendment. It states that, "A warrant shall issue only on affidavit sworn to before the judge or commissioner and establishing the grounds for issuing the warrant. If the judge or commissioner is satisfied that grounds for the application exist or that there is probable cause to believe they exist, he shall issue a warrant identifying the property or describing the person or place to be searched. * * * "

1274

Defendant argues that the search of his premises was unconstitutional because the affidavit which served as the basis for the issuance of the search warrant failed to establish probable cause that the objects particularly described on the face of the warrant—documents relating to gambling and gambling paraphernalia—were actually located in the home of the defendant.

The determination of the presence or absence of probable cause must inevitably depend upon the specific facts of each case. In this connection, however, the courts have laid down certain basic guidelines.

■ First, reviewing courts will pay great deference to a determination by a magistrate that probable cause did in fact exist. Thus, in upholding the validity of a warrant issued upon an affidavit based on hearsay, the Supreme Court said:

"We cannot say that there was so little basis for accepting the hearsay here that the Commissioner acted improperly. The Commissioner need not have been convinced of the presence of narcotics in the apartment. * * * There was substantial basis for him to conclude that narcotics were probably present in the apartment, and that is sufficient." [6]

Assuming, then, that if the affidavit is sufficient to convince an impartial magistrate that probable cause exists upon which a search may be based, his determination will generally stand.

■ Secondly, to establish probable cause the cases hold that the allegations of the affidavit must go beyond mere suspicion but need not constitute clear evidence.[7] In Carroll v. United States,[8] the Supreme Court held that the undisputed events observed by the affiant were sufficient in themselves to show probable cause. It further stated that probable cause existed where:

"* * * . the facts and circumstances within their [the officer's] knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that [an offense is occurring]." [9]

And this Circuit, in United States v. Moriarity,[10] defined probable cause as: "* * * not what would be competent evidence upon a trial to prove appellant's guilt, [but rather] a substan-

6. Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960). See, Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

7. Jones, at 270, 80 S.Ct. at 584. Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

8. 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

9. Ibid., at 162, 45 S.Ct. at 288. Brinegar, at 175–76, 69 S.Ct. at 1302, extracted this same quotation from the Carroll opinion. Carroll, at 161, 45 S.Ct. at 288, also stated that, "If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient." Accord, Dumbra v. United States, 268 U.S. 435, 441, 45 S.Ct. 546, 69 L.Ed. 1032 (1925).

Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) is not authority for the opposite position. In that case, the Supreme Court reversed a conviction for illegal interstate gambling activities because the FBI agent's affidavit in supporting the issuance of a search warrant was based upon information from a "confidential reliable informant" which was conclusory to such a degree that a magistrate issuing a warrant under such circumstances would be relying on casual rumor or general reputation. The Court held that where the tip of an informant would be the major element in a finding of probable cause, the issuing magistrate is required to demand greater precision in the affidavit. See, Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

10. 327 F.2d 345 (3rd Cir. 1964).

tial foundation in the affidavits for the belief of the agents. * * * " [11]

■ Thirdly, the affidavit must be interpreted in a sensible manner by the magistrate. As to this, the Supreme Court said in United States v. Ventresca: [12]

" * * * affidavits for search warrants * * * must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. * * * Where these [underlying] circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." [13]

■■ Thus, three principles emerge from the case law pertaining to Donlon's contentions: (1) the initial determination of the magistrate should be accepted provided that there was a substantial basis for his conclusion; (2) probable cause is present if the affiant states in his application facts which will enable a man of reasonable caution to hold the belief that a crime was occurring in a specific place; and (3) the affidavit must be interpreted in a common sense manner.

■ Here, the underlying affidavit executed by James D. Snyder, Special Agent of the Federal Bureau of Investigation, pursuant to which the questioned warrant was issued, contains allegations to the effect that Henry P. Gibbons, against whom a wiretap and pen regis-

ter had been authorized, was involved in an extensive interstate gambling ring which engaged in the practice of "laying off" with other bookmakers to guard against losses arising from particularly heavy bets for one number or contestant in a sporting event:

"Your affiant knows that from July 22, 1971 up to and including August 1, 1971, Henry Preston Gibbons, and others both named herein, and not named herein have conducted, financed, managed, supervised, directed and owned all, or at least part of, an illegal gambling business which is in violation of the Laws of the State of Delaware (11 Del.C. Chapter 3, subchapter xxxv) and which involves more than 5 persons and has a gross revenue of $2000 in a single day, having been in continuous operation for 30 days, in violation of 18 U.S.C. § 1955, and that Henry P. Gibbons and others named and unnamed herein have conspired to violate the aforesaid federal statute in violation of 18 U.S. C. § 371."

All this has nothing whatever to do with Donlon.

Snyder also stated in his affidavit that gamblers often use their own homes as the premises within which their illegal operations are carried on. This is a most general allegation. And quite to the contrary, it appears from this same affidavit that Gibbons, who allegedly conducted a much larger gambling business, operated, not from his home, but from his "store."

Snyder of his own knowledge further deposed that Joseph M. Donlon had a past history of twenty-five gambling arrests and twelve convictions. Such knowledge may be proper in establishing probable cause that Donlon was a gambler but is wholly unrelated to the question of where that crime may be occur-

---

11. *Ibid.*, at 348.

12. 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

13. *Ibid.*, 108–109, 85 S.Ct. 746. Accord, *Spinelli*, at 415, 89 S.Ct. at 588, "It is

true, of course, that the magistrate is obliged to render a judgment based upon a common-sense reading of the entire affidavit."

ring, or where evidence of that crime may be found.

During the wiretap, Snyder says he intercepted a call dialed by Gibbons to a number registered to Joseph M. Donlon, and overheard Gibbons inform "Joe", "that he had a $1.00 hit" on a number which had been previously laid off with Gibbons that day, and advised "Joe" that he could pick up the money at the "store." A single occurrence such as this would certainly tend to indicate that Donlon was involved in gambling activities but to a reasonable mind, unsupported by other evidence, would create nothing more than suspicion that his home was being used as a place of gambling operations.

Special Agents of the FBI reported to affiant that a gray 1971 Cadillac, registered to M. E. Donlon, arrived at Gibbons' store, and a man answering Donlon's description quickly entered the store and returned to his car. Other than observed above, this allegation in no way indicates that Donlon's home was used for illegal purposes.

A few days later, Snyder goes on to state, Gibbons and Leonard Brunsfield were talking on the tapped phone when Brunsfield informed Gibbons that he had laid off wagers totalling $17.00 with "Donlon" on a certain number. This does not afford the slightest justification for the belief that Donlon used his home for the alleged conduct for which the search was designed to obtain evidence.

Finally, the affiant stated that in the three years during which he had been investigating gambling activities in the Wilmington area, he knew of no other "Donlon" associated with numbers. This is negative evidence of the weakest kind, scarcely worthy of notice.

Of the several allegations from the affidavit considered above, only two have the slightest bearing on the question whether Donlon was conducting gambling operations from his home—one, as previously suggested, being a most general statement to the effect that gamblers often operate from their homes, and the other, showing a single instance of Donlon operating therefrom. Had Mr. Snyder been able to demonstrate, for instance, that Donlon initiated or received calls related to gambling operations and acted upon them on several occasions, or that Donlon had installed four telephones in his house instead of the usual one or two, the result might be different. But in my view, these facts do not "warrant a man of prudence and caution in believing" [14] that Donlon was either using his home to conduct the business of gambling or that evidence related thereto was located there.

It is my conclusion that the warrant in question here was not based upon probable cause as defined in the cases. The search being in violation of Donlon's constitutional rights, the evidence must be suppressed and returned unless, within 5 days, the United States appears and shows cause that some of such evidence constitutes contraband.

Submit order.

</div>

---

14. *Carroll*, at 161, 45 S.Ct. at 288.