**UNITED STATES of America ex rel. Jay B. HURLEY, Petitioner,**

v.

**STATE OF DELAWARE, Respondent.**

**No. 194.**

United States District Court, D. Delaware.

Oct. 11, 1973.

Jay H. Conner, of Conner, Daley & Erisman, Wilmington, Del., for petitioner.

Joseph A. Hurley, Deputy Atty. Gen., Wilmington, Del., for respondent.

## OPINION AND ORDER

LATCHUM, Chief Judge.

Jay B. Hurley, a state prisoner and the petitioner in this habeas corpus proceeding, was convicted by a jury on March 2, 1972 in the Superior Court of the State of Delaware with being concerned in interest in lottery policy writing in violation of 11 Del.C. § 662 and of conspiracy to commit the offense of being concerned in interest in lottery policy writing in violation of 11 Del.C. § 105. Thereafter, he was sentenced to a two month term of imprisonment to be followed by a four month probationary period on both offenses, the sentences to run concurrently, to pay the costs of prosecution, and to pay a $500.00 fine for each offense. His conviction was affirmed by the Delaware Supreme Court on June 29, 1973. Hurley v. State, (Del.Supr.1973).

The principal issues before this Court were raised and decided adversely to the petitioner in the state court on appeal.

Consequently, petitioner's state remedies have been effectively exhausted and the present petition is properly before this Court. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), rehearing den. 345 U.S. 946, 73 S.Ct. 827, 97 L.Ed. 1370 (1953).

Petitioner raises three points: first, that sufficient probable cause was not established by affidavit to support the issuance of a search warrant which was executed to obtain critical evidence used against petitioner at trial; second, that the critical evidence seized pursuant to the search warrant was taken from the premises of 4023 New Castle Avenue, whereas 4021 New Castle Avenue was the premises which was authorized to be searched by the search warrant; and, third, that the trial court permitted the prosecutor, in cross-examining certain of petitioner's character witnesses to ask whether the witnesses knew that petitioner had previously been arrested for receiving stolen goods, even though the petitioner had been acquitted of the charge and the fact of acquittal was made known to the trial judge.[1]

On September 28, 1973 oral argument was heard on these issues. No evidentiary hearing was requested or held because the application for the writ presented only issues of law. 28 U.S.C. § 2254.

From the state trial record the following pertinent facts emerge: On September 1, 1970, the police received information from an informant that number bets were being taken over the telephone by Gerald Alexander ("Alexander") at 1340 Prospect Drive, Wilmington, Delaware and that this operation was a sub-bank of Jay Hurley Enterprises at 4021 New Castle Avenue, New Castle, Delaware. On November 20, 1970, the informant indicated that Alexander had moved and was now taking number bets over the telephone at 13 Constitution Boulevard, New Castle, Delaware. In addition, on January 1, 1971 telephone records were subpoenaed of Alexander, Jay Hurley Enterprises, Jay Hurley Auto Body Company, and James A. Lewis ("Lewis"), a suspected local numbers writer who had previously been arrested and convicted of lottery policy writing. These telephone records revealed that a total of 308 calls had been made during the Fall of 1970 between phones at the two Alexander addresses and a phone at Lewis' address of 117 East Lake Street, Middletown, Delaware [2] and that a total of 24 calls had been made during the Fall of 1970 from phones at the Jay Hurley Enterprises and Jay Hurley Auto Body Company to a phone at the Lewis address, including 10 calls made during two days when telephone service was being transferred from Alexander's 1340 Prospect Drive address to his 13 Constitution Boulevard address.

As a result of this information, a further investigation was undertaken including the assignment of Patrolman James Evans to work as an undercover agent in the East Lake Street area of Middletown, Delaware and the surveillance of Alexander's premises at 13 Constitution Boulevard. This investigation revealed that number bets were in fact being taken at the Lewis address; that these bets were being relayed over the phone during periodic incoming telephone calls including two calls observed by Patrolman Evans as being received at Lewis' Middletown address precisely the same time two calls were originated at Alexander's address to some phone in

---

1. While additional procedural issues were enumerated in the petition to this Court alleging denials of petitioner's constitutional right to a fair trial, these issues were abandoned by the petitioner in his brief and at oral argument.

2. In particular, 271 calls were made between October 1, 1970 and December 23, 1970 from phones at the two Alexander addresses to a phone at the Lewis address, 34 calls were made between September 8, 1970 and November 12, 1970 from a phone at the Lewis address to a phone at the Alexander address at 1340 Prospect Drive, and 3 calls were made between November 25, 1970 and December 5, 1970 from a phone at the Lewis address to a phone at the Alexander address at 13 Constitution Boulevard.

Middletown; and that all number bets had to be totaled daily at Lewis' by 2:00 P.M. so they could be picked up shortly thereafter. In addition, a woman was observed on several different occasions leaving Alexander's address around 2:00 P.M. and returning some time later. Twice a woman was observed going to 11 Boswell Road, New Castle, Delaware before returning to Alexander's and on one occasion a woman was seen leaving Alexander's at precisely 2:00 P.M., arriving at Jay Hurley Enterprises, and returning to Alexander's later in the afternoon. Furthermore, on a different occasion a man was observed leaving Alexander's, going to 11 Boswell Road, then going to Jay Hurley Enterprises before returning to Alexander's.

The above information was set out in three different affidavits. One affidavit was attached to an application for a warrant to search James A. Lewis, his wife, and the Lewis' premise at 117 East Lake Street. Another affidavit was attached to an application for a warrant to search Gerald Alexander, the Alexander premise at 13 Constitution Boulevard, and two automobiles. The third affidavit was attached to an application for a warrant to search "JAY HURLEY and all buildings of JAY HURLEY AUTO BODY CO., JAY HURLEY ENTERPRISES located at 4021 New Castle Ave., New Castle, Del." and an automobile.

The three affidavits and search warrant applications were simultaneously presented to Judge Vincent A. Bifferato of the Superior Court of Delaware on January 28, 1971 and the three requested search warrants were issued by Judge Bifferato the same day.

The warrant to search the petitioner, the premises of Jay Hurley Auto Body Co., and Jay Hurley Enterprises was executed on January 28, 1971.[3] The ensuing search resulted in the discovery of evidence on the person of petitioner and in a building of Jay Hurley Enterprises which is located at 4023 New Castle Avenue, New Castle, Delaware. This evidence was subsequently introduced at trial and presumably was material in obtaining petitioner's conviction.

## 1. *Probable Cause Issue*

The Fourth Amendment states:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

■ In determining whether probable cause existed for the issuance of the Hurley search warrant, this Court looks to the specific facts of the case viewed in light of three basic guidelines. United States v. Donlon, 334 F.Supp. 1272, 1274–1275 (D.Del.1971). First, a reviewing court will pay great deference to a determination by a judge that probable cause did in fact exist so that although it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases will be determined largely by the preference to be accorded to issued warrants. United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

■ Second, the allegations of the affidavit must go beyond mere suspicion but need not constitute clear evidence. Jones v. United States, 362 U.S. 257, 270, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). A "substantial basis" must be presented to enable a man of reasonable caution to hold the belief that a crime was occurring in a specific place. In particular, facts must be presented demonstrating the trustworthiness of the affiant's source of information and the basis of that information. See United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.

---

3. The first two search warrants are not in issue in this case.

Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); and Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

■ Third, the affidavit must be interpreted in a sensible manner. As the Supreme Court said in United States v. Ventresca:[4]

"* * * affidavits for search warrants * * * must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. * * * [W]here these [underlying] circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner."[5]

■ Here, the affidavit attached to the Hurley search warrant standing alone, when given due deference to the finding of Judge Bifferato and when read in a sensible manner, does prove a "substantial basis" for the belief that a crime was being committed by Jay Hurley at Jay Hurley Auto Body Co. and Jay Hurley Enterprises of 4021 New Castle Avenue which establishments were reasonably presumed to be Jay Hurley's own operations.

In the first paragraph, the affidavit states that:

". . . an informant who has proven reliable in the past and who's information has lead [sic] to the arrest and conviction of person [sic] involved in gambling activity that GERALD ALEXANDER is taking num-

bers bets over the telephone at 1340 Prospect Dr., Kynlyn Apts., Wilmington, Del. and that this operation is a sub bank of Jay Hurley Enterprises at 4021 New Castle Ave., New Castle, Del. The informant can state this from his own personal knowledge, gained after placing a numbers bet."

First, this paragraph provides the *fact* that the informant had provided information in the past which had led to arrests and convictions from which a judge could reasonably find cause to believe the informant was reliable. In contradistinction, the affidavit in *Aguilar* merely stated the affiants "have received reliable information from a credible person"[6] without providing a factual basis for this conclusion.

Second, the first paragraph provides the *fact* that the informant's information concerning the illegal activity at Jay Hurley Enterprises was gained from the informer's own personal knowledge obtained as a result of the informer's placing a number bet himself. The issuing judge might have been aided by an additional description of exactly how the placing of the bet led to the personal discovery of the involvement of Jay Hurley Enterprises, and because of this lack of such additional detail, he might have found the affidavit insufficient and withheld the warrant. However, this Court considering the questions on a habeas corpus application finds there was substantial constitutional basis for the issuing judge to perform his role as a neutral and detached judicial officer and for him to conclude that the information was obtained in a reliable manner. Again in contradistinction, the *Aguilar* affidvit contained no affirmative allegation that the affiant's unidentified source spoke with personal knowledge and hence the issuing commissioner was there found to be acting merely as a rubber stamp.

4. 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

5. Id., 108–109, 85 S.Ct. at 746.

6. 378 U.S. 108, 109, 84 S.Ct. 1509, 1511, 12 L.Ed.2d 723 (1964)..

In addition, here the issuing judge was not limited to the first paragraph of the Hurley related affidavit. *Spinelli* authorizes looking to corroborative information should it be deemed the informant's report did not by itself meet the standard of constitutional probable cause. In the Hurley related affidavit a web of conspiracy was indicated by the record of telephone calls between Hurley's phone and Lewis' phone; Lewis being a man who "has been arrested and convicted of lottery policy writing." The web was expanded by the visits of persons between Hurley's establishments and Alexander's premise in light of the extraordinary number of calls recorded between Alexander's phone and Lewis' phone.

In *Spinelli* the Supreme Court demonstrated that mere surveillance of a person's movement and investigation of a telephone company's records may not suggest criminal conduct when taken by themselves and that "they are not endowed with an aura of suspicion by virtue of the informer's tip." [7] However, there are several features of the present situation which distinguish it from the situation in *Spinelli*. First, the tip in *Spinelli* was of a different nature than the tip here in that the *Spinelli* affidavit merely stated that the FBI "has been informed by a confidential reliable informant" and, hence, the judicial officer in *Spinelli* was not told of the informant's previous reliability or that the informant spoke from personal knowledge gained from a particular activity as the judge was informed in this case. Second, in *Spinelli* the affidavit described the action of *Spinelli* crossing a state line and parking his car in a lot without tying that conduct to any suspected criminal activity. In the Hurley affidavit the action was recorded as being between Hurley's address and Alexander's address; with Alexander's address being tied to suspected criminal activity through the record of 308 phone calls over a short period of time between Alexander's phone and Lewis' phone; Lewis having a record of illegal gambling activity.

Third, in *Spinelli* the affidavit merely indicated that Spinelli had two phones. In the Hurley affidavit 34 calls were recorded made in a five week period between Hurley's phones and Lewis' phone. In addition, a marked increase in calling was noted between Hurley and Lewis on the precise two days Alexander's phone was being transferred to a new location. These factors certainly distinguish the Hurley affidavit from the Spinelli affidavit and add additional corroborative evidence to the informer's tip from which a substantial basis for probable cause can be found.

As if that weren't enough, Judge Bifferato had the additional affidavits relating to Lewis and Alexander before him from which he could draw additional facts [8] in formulating his independent judgment that probable cause existed for the Hurley warrant.[9]

The Court concludes there was probable cause to issue the search warrant.

---

7. 393 U.S. 410, 418, 89 S.Ct. 584, 590, 21 L. Ed.2d 637 (1969).

8. These additional facts include, among other things, a report of Patrolman Evans' eyewitness observation of gambling activity at Lewis' premises in Middletown including hearing bets called out over the phone twice at the precise times calls were recorded as made from Alexander's to a Middletown phone. The additional facts also include a more detailed description of activity observed at Alexander's premises, including seeing activity between Alexander's and 11 Boswell Road, the very address a man in the Hurley affida-vit was recorded seen visiting while making a round trip tour from Alexander's to Hurley Enterprises and back.

9. "In any event, a search warrant may be based on interrelated affidavits in the Commissioner's files, even if earlier submitted to obtain a warrant for the search of other premises." United States v. Averell, 296 F. Supp. 1004, 1016 (E.D.N.Y.1969). See United States v. Serao, 367 F.2d 347 (2d Cir. 1966), vacated on other grounds, 390 U.S. 202, 88 S.Ct. 899, 19 L.Ed.2d 1034 (1967) and United States v. Nolan, 413 F.2d 850 (6th Cir. 1969).

## 2. *Wrong Address Issue*

Petitioner next contends that all evidence seized from the premises located at 4023 New Castle Avenue should be suppressed on the basis that the warrant only authorized the search of 4021 New Castle Avenue. Analysis of this contention must begin by noting that the Fourth Amendment requires a warrant to particularly describe the place to be searched. Thus, when a warrant is made out for 2144–8th Street and police by mistake search a completely unrelated building at 2124–8th Street, the search will be found improper. United States v. Kenney, 164 F.Supp. 891 (D.D.C. 1958).

■ However, it does not follow that in every case where there is a minor error *in a portion of* the description of the premise to be searched that an otherwise lawful search warrant must be held unlawful. The controlling test is found in Steele v. United States, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925):

> "It is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended."

■ As set out above, the Hurley search warrant authorized a search of Jay Hurley and all buildings' of Jay Hurley Auto Body Co., Jay Hurley Enterprises located at 4021 New Castle Avenue. In fact there is a fenced in building at 4021 New Castle Avenue bearing the title "Jay Hurley, Inc." with language indicating a specialty in auto body work. Within the same fence, separated by a small parking lot, is a second building at 4023 New Castle Avenue bearing a large sign "Jay Hurley Enterprises." It is the evidence found in this second building which petitioner seeks to have suppressed.

The warrant clearly states that Jay Hurley Enterprises was to be searched. The trial record indicates several reasons for believing that Jay Hurley Enterprises was in fact located at 4021 New Castle Avenue, including a telephone directory listing of Jay Hurley Enterprises as being located at 4021 New Castle Avenue. It would be a clear violation of the spirit of *Ventresca* to invalidate a search warrant on the hypertechnicality that the exact address of Jay Hurley Enterprises may have been erroneous when the intent of the warrant was so clear.

The case of United States v. Pisano, 191 F.Supp. 861 (S.D.N.Y.1961) substantiates this reasoning. In *Pisano* a search warrant was issued to search "a grocery store known as 'Esta's', located on the ground floor of a building at 129 West 3rd Street." "Esta's" was actually located at 109 West 3rd Street. The court held that despite the misstated number even a "groping stranger" could find his way to "Esta's" grocery store on West 3rd Street in Mount Vernon. In the same spirit this Court finds that the "groping stranger" would be equally successful in locating Jay Hurley Enterprises given the 4021 New Castle address since the building itself was advertised by a large sign across its front.

## 3. *Due Process Issue*

■ Lastly, petitioner asserts that he was denied constitutional due process by the prosecutor being allowed at trial to ask petitioner's character witnesses if they had heard that petitioner had previously been arrested. The arrest had not resulted in a conviction of petitioner and petitioner was not allowed to affirmatively assert this fact, although the trial record (Trial Transcript 556) indicates the jury was aware that no conviction had resulted by the testimony of at least one witness. Be that as it may, the law is clear that a character witness may be cross-examined as to an arrest whether or not it culminated in a conviction. Michelson v. United States, 335 U.S. 469, 482, 69 S.Ct. 213, 93 L.Ed. 168 (1948). In addition, warnings were given by the trial judge to the jury instructing the jury of the limited purpose for which this evidence was received. Hence, this Court finds no reason for

granting petitioner's writ on the basis of this testimony since there is no ground for finding a violation of due process.

Petitioner's application for a writ of Habeas Corpus therefore will be denied.