**UNITED STATES of America, Appellee,**

v.

**John D. JOHNSON, Appellant.**

**No. 76–1253.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 17, 1976.

Decided Sept. 21, 1976.

Charles L. Carpenter, North Little Rock, Ark., for appellant.

W. H. Dillahunty, U. S. Atty., and Fletcher Jackson, Asst. U. S. Atty., Little Rock, Ark., for appellee.

Before GIBSON, Chief Judge, and STEPHENSON and HENLEY, Circuit Judges.

PER CURIAM.

John D. Johnson appeals from his conviction by jury of possessing an unregistered firearm in violation of 26 U.S.C. § 5861(d). He contends that evidence of a sawed-off shotgun should have been suppressed because it was seized during a search rendered illegal by a search warrant which was impermissibly general. We find the search warrant not fatally defective, and accordingly we affirm the conviction.

On October 4, 1975 appellant's unregistered shotgun was seized by North Little Rock, Arkansas police officers during a drug-related search conducted pursuant to a search warrant obtained after the officers had twice on the night of October 3, 1975 purchased marijuana with currency the serial numbers of which had been recorded. Upon determining first-hand the premises from which the marijuana had been supplied, the officers prepared an affidavit and search warrant which were presented to a municipal judge who signed the warrant at his residence shortly after midnight. The warrant stated that it was for the search and seizure of

> marijuana, parphenrnalia [sic] and U. S. currency as described in the affidavit which constitutes evidence of criminal conduct tending to demonstrate that an offense was, and is being committed.

The search resulted in the seizure of four twenty dollar bills having serial numbers listed in the affidavit, a sawed-off shotgun which was in plain view of the searcher, but no marijuana.

Appellant Johnson was indicted by the United States Grand Jury for possession of the unregistered firearm. His motion to suppress the fruits of the search due to the generality of the warrant resulted in a full hearing in which the district court[1] ruled that there had been probable cause for the issuance of the warrant, that it had been lawfully executed, and that the word "paraphenrnalia [sic]" was not too general, referring to paraphernalia used with marijuana.

Johnson maintains that a search warrant for "marijuana, paraphenrnalia [sic] and U. S. currency as described in the affidavit" is overly broad thus calling for the suppression of evidence of the unregistered shotgun seized in the course of the search. In evaluating this assertion, the specific questions presented are 1) does the term "paraphernalia," unmodified by descriptive words, but following the expression "marijuana," meet the required constitutional standard of particularity, and 2) to what extent may deficiencies in the search warrant be cured by reference to the underlying affidavit?

I

The Fourth Amendment prohibited "general warrants" in an effort to prevent exploratory rummaging in a person's belongings by requiring that a "particular description" of the thing to be seized be stated in the warrant. *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The constitutional standard for particularity of description in a search warrant dictates that the language be sufficiently definite to enable the searcher to reasonably ascertain and identify the place authorized to be searched and the things authorized to be seized. *Steele v. United States,* 267 U.S. 498, 503–04, 45 S.Ct. 414, 69 L.Ed. 757 (1925). The underlying measure of adequacy in the description is whether given the specificity in the warrant, a violation of personal rights is likely. *United States v. Bynum,* 386 F.Supp. 449, 461 (S.D.N.Y.1974). The standard to be used in this determination is one of practical accuracy rather than technical nicety. *United States v. Gomez,* 42 F.R.D. 347 (S.D. N.Y.1967). Much of the caselaw addressing the issue of warrant particularity concerns sufficiency in the description of the premis-

---

1. The Honorable Garnett Thomas Eisele, Chief United States District Judge for the Eastern District of Arkansas.

**1314**

es to be searched rather than the items to be seized, though the same basic test appropriately applies to both. Repeatedly, search warrants with minor errors in the description of the structure to be searched have been held valid so long as the executing officer exerting reasonable effort could identify the site intended. *United States v. Melancon,* 462 F.2d 82, 94 (5th Cir.), *cert. denied,* 409 U.S. 1038, 93 S.Ct. 516, 34 L.Ed.2d 487 (1972); *Hanger v. United States,* 398 F.2d 91, 98 (8th Cir. 1968), *cert. denied,* 393 U.S. 1119, 89 S.Ct. 995, 22 L.Ed.2d 124, *reh. denied,* 395 U.S. 971, 89 S.Ct. 2106, 23 L.Ed.2d 761 (1969); *United States ex rel. Hurley v. Delaware,* 365 F.Supp. 282, 288 (D.Del.1973); *United States v. Cotham,* 363 F.Supp. 851, 855 (W.D.Tex.1973).

■ Similarly, a "practical accuracy" standard has been consistently employed in applying the Supreme Court pronouncement that in the description of property to be seized "nothing is left to the discretion of the officer executing the warrant." *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927). This court realistically recognized the technical difficulties involved in search warrant language when it observed that the degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved. Where the precise identity of goods cannot be ascertained at the time the warrant is issued, naming only the generic class of items will suffice because less particularity can be reasonably expected than for goods (such as those stolen) whose exact identity is already known at the time of issuance. *Spinelli v. United States,* 382 F.2d 871, 886 (8th Cir. 1967), *rev'd on other grounds,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Thus grounding their decisions in practicality and reasonableness, courts have found no impermissible vague-

ness in descriptions specifying merely "bookmaking paraphernalia" (*Spinelli, supra*); "gambling paraphernalia" (*Nuckols v. United States,* 69 U.S.App.D.C. 120, 99 F.2d 353 (1938)); "run down sheets . . . and like paraphernalia" (*Calo v. United States,* 338 F.2d 793 (1st Cir. 1964)); or "nine guns" when twenty-six were actually present to be seized (*United States v. Geldon,* 357 F.Supp. 735 (N.D.Ill.1973)).

■ Although a word of art primarily in the law of property,[2] the term "paraphernalia" is not unknown in criminal law having been used in several state gambling statutes, and as a result, having appeared frequently in search warrant descriptions such as those noted above where circumstances made it virtually impossible for officers to know precisely what gambling devices were present to be seized.[3] In such situations, the hypertechnicality of the particularity requirement has yielded to the practical necessities of law enforcement, and the description of property in the warrant has been held to a somewhat lower standard of specificity calling for only the "generic class" to be named. Drug-related searches give rise to virtually identical difficulties and can reasonably be treated in the same manner. Because the officers in this case had only observed probable drug commerce from outside the building, it would be unreasonable to expect them to describe what objects inside might have been used for packaging or administering the controlled substance. The nature of these circumstances plainly permits a somewhat different standard of specificity in the description so that use of "paraphernalia" in a generic sense may be considered sufficient because it reflects the maximum amount of particularity in reality available at the time the warrant was issued.

Likewise, use of "paraphernalia" as an unmodified noun did not render the terms

**2.** Black's Law Dictionary 1267 (4th ed. 1951).

**3.** For construction of "paraphernalia" as used in state gambling statutes *See People v. Watkins,* 126 Cal.App.2d 199, 271 P.2d 641 (1954);

*State v. Caruso,* 3 Terry 310, 32 A.2d 771 (Ct. Gen.Sess.Del.1943); *State v. DiMaio,* 185 A.2d 269 (Super.Ct.Del.1962); *State v. Branney,* 62 Wyo. 40, 160 P.2d 972 (1945).

of the warrant indefinite to the executing officers. In recent years "paraphernalia" has become a standard vocabulary word in the vernacular of the drug community, including both drug users and drug enforcement personnel. In the context of this search for marijuana, there seems to have been little doubt that "paraphernalia" contemplated that which related to the use of marijuana. *See Andresen v. Maryland,* —— U.S. ——, ——, 96 S.Ct. 2737, 49 L.Ed.2d —— (1976). Furthermore, both of the executing officers who were asked defined "paraphernalia" as objects used in the sale or use of controlled substances. Their testimony indicates that they were in fact aware of what items were authorized to be seized.

Though it would have been better had the broad term "paraphernalia" been modified by an appropriately descriptive word such as "drug" or "marijuana," [4] we conclude that its use in this warrant can be justified as falling within the practical margin of flexibility permitted by the constitutional requirement for particularity in the description of items to be seized. Because the circumstances necessitated a mere generic class description and the officers, as well as the appellant, were in actuality advised of the seizable items, use of "paraphernalia" was sufficiently definite to make a violation of Fourth Amendment rights highly unlikely.

## II

In determining whether "U. S. currency as described in the affidavit" is sufficient, it should be noted that "U. S. currency" refers to a generic class, so with respect to this search such a term would not in and of itself render the description fatally vague. Even in a case where U. S. currency was stolen, this court did not find it necessary for all the serial numbers of bank robbery loot to be described for the warrant to be valid. *Hanger v. United States, supra.* It is therefore not a question of simple breadth, but the fact that the search warrant incorporated by reference the affidavit wherein the serial numbers of the currency were listed that raises the question of deficiency concerning the currency term of the description.

The traditional rule is that the generality of a warrant cannot be cured by the specificity of the affidavit which supports it because, due to the fundamental distinction between the two, the affidavit is neither part of the warrant nor available for defining the scope of the warrant. *Moore v. United States,* 149 U.S.App.D.C. 150, 461 F.2d 1236, 1238 (1972); 79 C.J.S. Searches & Seizures § 81a (1952). Specificity is required in the warrant itself in order to limit the discretion of the executing officers as well as to give notice to the party searched. *United States v. Marti,* 421 F.2d 1263, 1268 (2d Cir. 1970). However, where the affidavit is incorporated into the warrant, it has been held that the warrant may properly be construed with reference to the affidavit for purposes of sustaining the particularity of the premises to be searched, provided that a) the affidavit accompanies the warrant, and b) the warrant uses suitable words of reference which incorporate the affidavit therein. *United States v. Womack,* 166 U.S.App.D.C. 35, 509 F.2d 368 (1974); *United States v. Lightfoot,* 165 U.S. App.D.C. 177, 506 F.2d 238 (1974); *United States v. Thompson,* 161 U.S.App.D.C. 339, 495 F.2d 165 (1974); *Moore v. United States, supra.*

Though again the rule has been articulated most often in cases dealing with descriptions of places to be searched, it may be extended to the items to be seized as well. In this case, suitable words referring to the affidavit were present in the warrant. While it is not apparent from the record whether the affidavit was physically attached to the warrant, the appellant him-

---

4. We agree with Judge Eisele's admonition that "law enforcement officers might be advised that they would be better off not to use [paraphernalia] except when it is properly modified

. . . otherwise it's a fairly broad term and unless circumscribed, could be the vehicle for a much too broad search. . . ."

self testified that the officers "showed me a list of the serial numbers and matched the numbers up for me." This indicates that the affidavit was readily available to all parties, and removes any doubt as to appellant's receipt of notice or the presence of adequate limitations on the executing officers' discretion which otherwise might have been raised.

Thus it is clear that the language of the warrant was in fact narrowed by its reference to the affidavit and that the warrant supplemented by the affidavit material was sufficiently definite to meet the constitutional standard of particularity in description.

 Having determined that the search warrant was not fatally defective, we observe that appellant's shotgun was seized in the course of an authorized search for the marijuana-related items referred to in the warrant. It is established that objects falling into the plain view of an officer properly in a position to perceive the view are subject to seizure and admissible as evidence. *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). The plain view rule applies if 1) the initial intrusion resulting in the "plain view" was lawful, 2) discovery of the object was inadvertent, and 3) the incriminating nature of the object was "immediately apparent." *Coolidge v. New Hampshire, supra,* 403 U.S. at 464–73, 91 S.Ct. 2022.

 In the case of appellant's shotgun, all three requirements were met. The officers initially entered the premises under the auspices of a search warrant herein found adequate. The firearm was inadvertently discovered leaning against a wall. Its incriminating nature was immediately apparent because it seemed to be a sawed-off shotgun, the observation of which constituted probable cause for the reasonable belief that a crime, the possession of a contraband firearm, was being committed in the presence of the officers. *United States v. Wilson,* 524 F.2d 595, 598 (8th Cir. 1975), *cert. denied,* 424 U.S. 945, 96 S.Ct. 1415, 47 L.Ed. 351 (1976); *United States v. Williams,* 523 F.2d 64, 67 (8th Cir. 1975), *cert. denied,* 423 U.S. 1090, 96 S.Ct. 884, 47 L.Ed. 101 (1976); *United States v. Johnson,* 506 F.2d 674, 676 (8th Cir. 1974), *cert. denied.,* 421 U.S. 917, 95 S.Ct. 1579, 43 L.Ed. 784 (1975); *United States v. Story,* 463 F.2d 326, 328 (8th Cir.), *cert. denied,* 409 U.S. 988, 93 S.Ct. 343, 34 L.Ed.2d 254 (1972); *United States v. Cecil,* 457 F.2d 1178, 1180 (8th Cir. 1972).

 Furthermore, before actually removing the shotgun from appellant's house, the officers measured the weapon finding the barrel length to be sixteen inches and thus within the class defined by 26 U.S.C. § 5845(a) which together with 26 U.S.C. § 5861(d) makes possession of an unregistered shotgun having a barrel length of less than eighteen inches illegal. Subsequent investigation revealed that the twelve gauge Winchester was not registered to the appellant.[5]

The judgment of conviction is affirmed.

---

**5.** The absence of probable cause for the officers to believe that the weapon was unregistered does not invalidate the seizure because knowledge of nonregistration is not a prerequisite to lawful seizure. *United States v. Canestri,* 518 F.2d 269 (2d Cir. 1975); *United States v. Story, supra; United States v. Cecil, supra; United States v. Zeidman,* 444 F.2d 1051 (7th Cir. 1971). In fact, as the court pointed out in *United States v. Cecil, supra* at 1180, requirement of such knowledge before seizing a contraband firearm "would stultify the enforcement of the National Firearm Act."