**UNITED STATES of America, Appellee,**

v.

**Anna M. STRAND, a/k/a Anna Rogers, Appellant.**

**No. 84–5041.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 11, 1984.

Decided May 2, 1985.

---

Bowman, Circuit Judge, dissented from part of opinion and filed an opinion.

Scott Tilsen, Minneapolis, Minn., for appellant.

Joseph Walbran, Minneapolis, Minn., for appellee.

Before ARNOLD, FAGG, and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

In February 1983, the United States Postal Service began an investigation into mail missing from the ·Minneapolis-Winstead postal route in Minnesota. On April 29, 1983, Postal Inspector Michael George wrote out an affidavit setting forth results of the investigation. On the basis of this affidavit, George obtained a warrant from a United States Magistrate authorizing the search of a certain apartment in New Germany, Minnesota occupied by Anna Strand and Paul Rogers, both of whom were mail carriers on the route in question.

On May 5, 1983, four postal inspectors searched the Strand/Rogers apartment and compared items found in the apartment with items listed in the affidavit and in another document. The postal inspectors seized certain items that matched items reported missing and also seized three mail sacks belonging to the Postal Service. Some of the items seized were not identified by the postal patrons who had reported mail losses and were eventually returned to Strand. Strand was indicted on June 9, 1983. On July 29, 1983, the District Court sustained the validity of the warrant and denied Strand's motion to suppress the incriminating items seized in the May 5 search. On September 15, 1983, Strand was convicted of knowing possession of articles stolen from the mail (Count I of the indictment), theft of Postal Service property (Count II), and obstructing correspondence (Count III), under 18 U.S.C. §§ 1708, 1707, and 1702. Strand appeals her convictions to this Court, arguing that the search warrant was invalid because it was issued without probable cause and because it was a general warrant prohibited by the Fourth Amendment, and that the items seized by postal inspectors should therefore have been suppressed.

I.

When· reviewing the issuance of a warrant by a magistrate, the function of this Court is to determine whether "the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Il-linois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). The facts and conclusions set forth in the affidavit in support of the application for the warrant may be summarized as follows:

1) Postal customers from ten post offices along the Minneapolis-Winstead route had reported numerous losses of letter and parcel mail.

2) There were twelve dates on which customers lost "substantial" quantities of mail.

3) Either Anna Strand or Paul Rogers was the driver on the Minneapolis-Winstead route on nine of the twelve dates on which "substantial" losses occurred.

4) Either Strand or Rogers probably was the driver on the other three dates.

5) Strand and Rogers were living together in Winstead and in New Germany.

6) Many of the letters stolen contained checks which had not yet been negotiated.

7) Several parcels had been reported missing, two of which contained unusual and readily identifiable contents. One parcel contained 300 hammer-shaped ball point pens, while the other parcel included sheets, gloves, socks, a sweatshirt, a copper flowerpot, a flowered butterdish, cosmetics, and a copy of the Kuhlman Kinfolk Heritage book.

8) The merchandise in the parcels was of the type which would not be resalable and would be put into regular use.

9) The outgoing trash at the Rogers/Strand residence in New Germany had been examined periodically and none of the missing mail had been discarded in the garbage.

10) Because parcel post and letter mail is processed separately by different employees in Minneapolis, it was unlikely that the mail was stolen there.

For these reasons, the postal inspector believed · and the magistrate was satisfied that there was probable cause to believe that the missing mail was in the

Strand/Rogers apartment in New Germany.

"Probable cause exists where 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949) (quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. We therefore turn to the affidavit to determine whether it provided a substantial basis for the magistrate's finding of probable cause.

The affidavit, as subscribed and sworn to by Postal Inspector George, recounts the results of his investigation into the disappearance of large amounts of parcel post and other mail. The missing mail was posted from ten separate post offices, all of which were on the same postal route. Once the mail arrived in Minneapolis, one group of postal employees handled the parcel post and a different group handled the other mail. Thus, only the route drivers had regular, practical access to all the missing mail and it is reasonable to infer that the mail was disappearing on the postal route.[1]

There were twelve dates on which large amounts of mail had disappeared. On nine of these twelve dates, either Strand or Rogers had been the driver of record on the postal route; postal records do not indicate who the driver was on the other three days, but Inspector George thought it probable that it was either Strand or Rogers. Strand and Rogers lived together.

None of the missing mail had been discovered. Inspector George assumed that Strand would store the stolen mail in her home since some of it was of the kind that would be put into normal home use. Thus, Inspector George believed that the missing mail could reasonably be expected to be in the Strand/Rogers apartment in New Germany.[2]

■ Examining "all the circumstances set forth in the affidavit," *Illinois v. Gates*, 462 U.S. at 238, 103 S.Ct. at 2332, we cannot conclude that the affidavit did not provide the magistrate with a substantial basis for determining the existence of probable cause. *Compare Iverson v. North Dakota*, 480 F.2d 414 (8th Cir.), *cert. denied*, 414 U.S. 1044, 94 S.Ct. 549, 38 L.Ed.2d 335 (1973) (where defendant had known murder victims, had been in the victims' apartment 48 hours before the bodies were discovered and had scratches on his hands, arms and neck, probable cause existed for search of defendant's car and home for bloodstained clothes).

## II.

■ We next consider whether the warrant described the items to be seized with sufficient particularity to be valid under the Fourth Amendment. The warrant simply stated that postal inspectors were to search the Strand/Rogers apartment for "stolen mail which is evidence of and the fruits of the crime of theft from the mail."

---

1. It is unlikely that postal employees in Minneapolis would pilfer incoming mail only from one mail route.

2. We note that the affidavit states that Rogers and Strand "have been living together in Winstead and in New Germany, Minnesota." Although we find that this statement suggests that Strand and Rogers may have kept two residences, we do not find any Fourth Amendment impropriety in the fact that postal inspectors obtained a search warrant only for the New Germany apartment. *See* 1 LaFave, Search and Seizure § 3.2 at 486–87 (1978 & Supp.1984); *cf. Iverson v. North Dakota*, 480 F.2d 414, 418 (8th Cir.), *cert. denied*, 414 U.S. 1044, 94 S.Ct. 549, 38 L.Ed.2d 335 (1973).

The constitutional standard for particularity of description in a search warrant is that the language be sufficiently definite to enable the searcher reasonably to ascertain and identify the things authorized to be seized. *Steele v. United States*, 267 U.S. 498, 503–04, 45 S.Ct. 414, 416–17, 69 L.Ed. 757 (1925). This Court has applied a standard of "practical accuracy" in determining whether a description is sufficiently precise to satisfy the requirements of the Fourth Amendment, recognizing that the degree of specificity required necessarily depends upon the circumstances of each particular case. *United States v. Johnson*, 541 F.2d 1311, 1314 (8th Cir.1976).

■ We believe that the term "stolen mail" is sufficiently definite to enable a postal inspector to identify and seize items which clearly fit within such a generic class, such as letters and parcels, neither addressed to nor sent by the person whose property is being searched, bearing postage stamps or marks. A search for "stolen mail" does not, however, permit the seizure of items which do not fit into the generic category. Many of the items seized in the present case under the rubric of stolen mail were not found in parcels of mail, and included items such as socks, a sweatshirt, cosmetics, a sweater, a thermometer, a china plate, and gloves; a warrant commanding postal inspectors to seize "stolen mail" clearly does not authorize them to seize items ordinarily considered to be normal household goods. We believe the magistrate erred in issuing a warrant which did not identify with sufficient particularity the items to be seized from the Strand/Rogers apartment in New Germany other than those items clearly recognizable as being within the generic category of "stolen mail."

The government argues, however, that the warrant in this particular case incorporated the affidavit, satisfying the Fourth Amendment's demand for particularity through the specific listing in the affidavit of the non-generic items to be seized. This Court discussed the incorporation of affidavits into warrants in *United States v. Johnson:*

> The traditional rule is that the generality of a warrant cannot be cured by the specificity of the affidavit which supports it because, due to the fundamental distinction between the two, the affidavit is neither part of the warrant nor available for defining the scope of the warrant.... However, where the affidavit is incorporated into the warrant, it has been held that the warrant may properly be construed with reference to the affidavit for purposes of sustaining the particularity of the premises to be searched [and the items to be seized], provided that a) the affidavit accompanies the warrant, and b) the warrant uses suitable words of reference which incorporate the affidavit therein.

*Id.* at 1315 (citations omitted). In *Johnson*, therefore, this Court held that a warrant which was for the search and seizure of "marijuana, paraphenralia [sic] and U.S. currency as described in the affidavit ..." sufficiently incorporated the affidavit when the affidavit accompanied the officers during the search and was shown to the defendant. *Id.* at 1313, 1314–15.[3] Thus, in *Johnson*, the affidavit helped to define the scope of the search and seizure authorized by the warrant.

In the present case, there is no similar incorporation. Though the affidavit did accompany the warrant, the warrant states only that "[a]ffidavit(s) [have] been made" and that "grounds for application for issuance of the search warrant exist as stated in the supporting affidavit(s)." The warrant does not in any way incorporate the affidavit's listing of particular items reported missing. Accordingly, we hold that the warrant authorized a search only for "stolen mail," and that it did not describe the other items to be seized with

---

**3.** The affidavit apparently described only the currency in more detail. *See United States v.* *Johnson*, 541 F.2d at 1313.

sufficient particularity to be valid under the Fourth Amendment.

■ Because we hold that the warrant did properly authorize a search for "stolen mail," *i.e.*, for letters and parcels identifiable as mail, as distinguished from ordinary household items that may have been stolen *from* the mail, the seizure by postal inspectors of a sealed letter with postage affixed addressed to Zaner Gallery from Sam Baertsch was valid. This piece of evidence sufficiently supports Strand's conviction on Count III (obstructing correspondence). Accordingly, that conviction is affirmed.

### III.

The Government contends that though the warrant may not have been sufficiently particular to support the seizure of items readily identifiable as "stolen mail," Strand's convictions on Counts I and II should nonetheless be affirmed because all the items seized by the postal inspectors were properly seized under the plain view doctrine. The Supreme Court articulated a test for applying the plain view doctrine in its plurality opinion in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971): the plain view doctrine permits the warrantless seizure of items, discovered inadvertently by a police officer during an otherwise valid intrusion, when their incriminating nature is immediately apparent. *Id.* at 465–70, 91 S.Ct. at 2037–40. Though the precedential value of *Coolidge* and the precise meaning of the requirements that there be an "inadvertent discovery" and that the incriminating nature of the items seized be "immediately apparent" are still not settled, *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 1540, 1541, 75 L.Ed.2d 502 (1983) (Justice Rehnquist for the plurality), 1544 (Justice White concurring), the *Coolidge* test itself has not been disapproved. *Id.* at 1545 (Justice Powell concurring in the judgment).

■ Since we have held in Part I of this opinion that probable cause existed for the issuance of the warrant and in Part II of this opinion that the warrant was particular enough to support a search for items that were obviously "stolen mail," it follows there was a valid intrusion into the Strand/Rogers apartment. Strand's conviction on Count II (theft of postal service property) rests upon the admission into evidence of several mail sacks (one of which contained the Baertsch letter) discovered in Strand's apartment. Given the presence of that letter in the sack and the fact that large quantities of mail had been disappearing from Strand's mail route, the incriminating nature of the mail sacks found in the apartment is apparent. Moreover, it seems abundantly clear that their discovery was inadvertent, in the sense that the postal inspectors were looking not for mail sacks or other Postal Service property but for specific items that had been entrusted to the mail and not delivered. It thus follows that the mail sacks were properly seized under the plain view doctrine. We therefore affirm Strand's conviction on Count II.

Strand's conviction on Count I (knowing possession of articles stolen from the mail) rests upon the admission into evidence of various household items seized during the search of the apartment and later positively identified as items that had been mailed but that never reached their intended destinations.

The determination as to whether the ordinary household items seized were inadvertently discovered and whether their incriminating nature was immediately apparent cannot be made for the seized group of items as a whole, but rather must be made individually for each specific item. As the record before us does not conclusively indicate for each item seized what degree of expectation the postal inspectors had that it would be discovered, nor why it was apparent that the item was incriminating, we do not believe that the facts in the instant case are sufficiently developed for considered application of the *Coolidge* test to the items that provided the basis for Strand's conviction on Count I.

### IV.

Though we are unable to hold that the seizure of the household items upon which

Strand's conviction on Count I rests did not violate the Fourth Amendment, the Government urges us to affirm Strand's conviction on Count I on the basis of *United States v. Leon*, —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) and *Massachusetts v. Sheppard*, —— U.S. ——, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), which provide that the exclusionary rule does not operate to exclude evidence seized by a law enforcement officer acting in objectively reasonable reliance on a warrant issued by a neutral and detached magistrate, though the warrant is later determined to be invalid.[4]

In *Leon*, police officers had conducted a search pursuant to a warrant. A United States District Court later held the affidavit supporting the warrant insufficient to establish probable cause, and suppressed certain evidence seized during the search. The Supreme Court had granted certiorari to consider whether the Fourth Amendment exclusionary rule should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective. *United States v. Leon*, 463 U.S. 1206, 103 S.Ct. 3535, 77 L.Ed.2d 1386 (1983).

The Supreme Court reasoned in *Leon* that since the exclusionary rule is not a personal constitutional right of the person aggrieved by an illegal search or seizure, but rather a judicially created remedy designed to safeguard Fourth Amendment rights through its deterrent effect, the question of whether the rule ought to be applied in a particular case is distinct from the question of whether the Fourth Amendment rights of the party seeking to invoke the rule have been violated. Thus, the

determination of whether illegally seized evidence ought to be excluded is to be made by balancing the social costs of excluding inherently trustworthy tangible evidence from a criminal prosecution, *see* 104 S.Ct. at 3413, with the "benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *Id.* at 3421.

Noting that the purpose of the exclusionary rule is to deter police conduct,[5] the Court stated that in most cases "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope ... there is no police illegality and thus nothing to deter." *Id.* at 3420. Since "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations," *id.*, the Court concluded that the benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated warrant were "marginal or nonexistent." *Id.* at 3421.

Applying this principle to the case before them, the Court found that the application for the warrant was clearly supported by more than a "bare bones" affidavit, which related the results of an extensive investigation and provided evidence sufficient to have convinced members of the federal judiciary that probable cause existed. Under such circumstances, the Court held that the "officer's reliance on the magistrate's determination of probable cause was objectively reasonable and application of the ex-

---

**4.** Although the application of *Leon* and *Sheppard* to this case was not briefed to this Court, we see no need for an additional briefing or for an evidentiary hearing on this issue. "Application of the objective-reasonableness standard is really more akin to the application of a new legal criterion to the same facts, than it is to the decision of a new question of fact." *United States v. Sager*, 743 F.2d 1261, 1265 (8th Cir. 1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1196, 84 L.Ed.2d 341 (1985).

**5.** The Court found no reason "for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate." 104 S.Ct. at 3418. Nor did the Court believe that a concern for the integrity of the judicial process meant that courts must never admit evidence seized in violation of the Fourth Amendment. *Id.* at 3420 n. 22. Thus, the Court's opinion indicates that the chief benefit of the exclusionary rule is its deterrent effect on police.

treme sanction of exclusion [was] inappropriate." *Id.* at 3423.[6]

In *Massachusetts v. Sheppard,* police had applied for a warrant on the basis of an affidavit which listed a number of items police wished to seize, including two bags of marijuana, wire and rope that matched wire and rope found on the body of the murder victim, and clothing that might have blood stains or burn marks. Despite the specificity in the affidavit, however, the warrant itself was a form warrant which authorized a search only for controlled substances. Sheppard was convicted at trial, but the Supreme Court of Massachusetts reversed his conviction, holding that the evidence seized by police should have been excluded because the description in the warrant of the items to be seized was completely inaccurate and because the warrant did not incorporate the affidavit.

The United States Supreme Court reversed. Though issuing the warrant may have been an "error of constitutional dimensions," *Sheppard,* 104 S.Ct. at 3429, the Court held that the only question before it was "whether there was an objectively reasonable basis for the officers' mistaken belief" that the search they conducted was authorized by a valid warrant. *Id.* at 3428–29. Finding that there was, the Court concluded that suppression was not required.

As we previously noted, under *Leon* and *Sheppard,* the exclusionary rule does not apply when the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a neutral and detached magistrate, even though the warrant is later determined to be invalid. Consequently, the issue before us is whether there was an objectively reasonable basis for the postal inspectors in this case to have believed that the warrant for the search of the Strand/Rogers apartment for "stolen mail" validly authorized their seizure of the household items here in question.

The panel finds itself in disagreement on this issue. The view of my two brethren, which is, of course, the opinion of the Court, appears as Part V of this opinion. My own dissenting view is appended.

### V.

■ The holding of *Leon* and *Sheppard* is designed to apply to cases "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate *and acted within its scope.*" *Leon,* 104 S.Ct. at 3420 (emphasis added) (footnote omitted). This is not such a case. Here, the warrant did not authorize the seizure of ordinary household items, and we do not believe that there is an objectively reasonable basis for the postal inspectors to have believed that the warrant authorized the seizure of such items.

First, we note that the seizure of ordinary household goods from Strand's apartment in the present case went far beyond the seizure expressly authorized by the warrant, which authorized only the seizure of "stolen mail," *i.e.,* letters and parcels. While the Supreme Court in *Sheppard* upheld the introduction into evidence of wire, rope, and clothing seized on the basis of a warrant that facially authorized only the seizure of drugs, the Court in that case noted that the officers expressly asked the magistrate who issued the warrant whether the warrant they had been issued permitted them to seize wire, rope and clothing; the magistrate assured them that it did. In the present case, there is no evidence that the magistrate indicated to the officers in any way that the warrant that authorized them only to seize "stolen mail"

---

6. The Court carefully pointed out that exclusion remains an appropriate remedy (1) if a judge or magistrate in issuing a warrant was misled by an affidavit the affiant knew or should have known was false, (2) if a judge or magistrate has wholly abandoned the judicial role and merely serves as a rubber-stamp for police, *see Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979), (3) if the affidavit supporting the warrant so lacked probable cause as to render official belief in its validity entirely unreasonable, and (4) if a warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *United States v. Leon,* 104 S.Ct. at 3421–22.

also permitted them to seize ordinary household items.

Second, we note that the seizure of household items in the present case not only went beyond the seizure contemplated by the warrant, but also went far beyond the seizure contemplated by the affidavit submitted to the magistrate by the postal inspectors. Though the affidavit in the present case was not actually incorporated into the warrant, we believe that the affidavit still could be a reliable indicator of the scope of the search the postal inspectors believed the magistrate had authorized. Had the postal inspectors in the present case presented the magistrate with an affidavit containing a particularized list of household items stolen from the mail that they wished to seize, and had the magistrate thereupon issued a warrant authorizing the seizure of stolen mail, we believe the postal inspectors could reasonably have believed that they were permitted to seize the household items particularly described in the affidavit. In the present case, however, not only was the description of the items listed in the affidavit far too general to provide any meaningful check on the discretion of the inspectors as to the items actually mentioned in the affidavit;[7] in addition, the inspectors seized a large number of items not mentioned in the affidavit, but mentioned only in another document never submitted to the magistrate. Some of the items mentioned in this separate document were not known by the postal inspectors to have been reported missing at the time they applied for the warrant.[8]

None of the household items seized was distinguishable as "stolen mail" on any objective basis. All the items mentioned in the affidavit had been reported missing, and presumably could have been described in the affidavit in more specific terms. There has been no showing of any good reason for the lack of more particularized descriptions. A further application could have been made to the magistrate to obtain

authority to search for additional missing items brought to the officers' attention after the issuance of the warrant.

For these reasons, we do not believe that the postal inspectors had an objectively reasonable basis for believing that the warrant issued by the magistrate authorized them to seize the household items introduced as evidence against Strand on Count I. Thus, we hold that the principle articulated in *Leon* and *Sheppard* does not permit the introduction of this evidence against Strand.

In Part III of this opinion we acknowledged that the facts in this case are not sufficiently developed for application of the *Coolidge* test to determine whether the various household items were properly seized by postal inspectors pursuant to the plain view exception. Although it is unlikely for many of the items seized that their discovery was both inadvertent and that their incriminating nature was immediately apparent, we cannot exclude the possibility that some of these items are admissible under the plain view doctrine. Because we cannot conclude that the household items seized can properly be admitted under the doctrine announced in *Leon* and *Sheppard*, we find it necessary to remand for a hearing on the issue of which, if any, of these items seized during the search of the Strand/Rogers apartment are admissible under the plain view doctrine.

## VI.

We affirm Strand's convictions on Count II and Count III. We reverse her conviction on Count I and remand for a hearing on the issue of which, if any, of the household items seized during the search of the Strand/Rogers apartment are admissible under the plain view doctrine.

BOWMAN, Circuit Judge, dissenting from Part V of the opinion of the Court.

As mentioned earlier, I dissent from the holding of the Court in Part V that *Leon*

---

7. Among the items described in the affidavit were, for example, "three pairs of ski gloves [and] three pairs of wool ski socks."

8. The warrant was obtained on April 29, 1983 and the search was conducted on May 5, 1983.

and *Sheppard* do not permit the introduction of the household items seized as "stolen mail" during the search of the Strand/Rogers apartment as evidence against Anna Strand on Count I of the indictment. With all due respect, I believe the Court in Part V is not properly distinguishing between the technical dictates of the Fourth Amendment's particularity requirement and the nature of the inquiry mandated by *Leon* and *Sheppard.* Neither *Leon* nor *Sheppard* alters the substantive requirements of the Fourth Amendment in any way. Rather, they simply announce a rule of evidence: if, after determining that a warrant does not satisfy the requirements of the Fourth Amendment, a court concludes that the executing officer's reliance on the warrant nevertheless was objectively reasonable, evidence seized in reliance on that warrant is not to be excluded. Because there are a number of factors that convince me that the postal inspectors had an objectively reasonable basis for believing that they were conducting only the search that the warrant authorized them to conduct, I would hold that *Leon* and *Sheppard* require us to affirm Strand's conviction on Count I.

*Leon* and *Sheppard* clearly contemplate that " '[s]earches [made] pursuant to a warrant will rarely require any deep inquiry into reasonableness,' for 'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.' " *Leon,* 104 S.Ct. at 3421 (quoting *Illinois v. Gates,* 462 U.S. at 267, 103 S.Ct. at 2347 (White, J., concurring in the judgment) and *United States v. Ross,* 456 U.S. 798, 823 n. 32, 102 S.Ct. 2157, 2172 n. 32, 72 L.Ed.2d 572 (1982)). By way of illustration of the inquiry reviewing courts are to make, the Supreme Court noted that certain situations would negate a belief that an officer acted with objective reasonableness: (1) if a judge or magistrate in issuing a warrant was misled by an affidavit the affiant knew or should have known was false; (2) if a judge or magistrate has wholly abandoned the judicial role and merely serves as a rubber-stamp for police;

(3) if the affidavit supporting the warrant so lacked probable cause as to render official belief in its validity unreasonable; or (4) if a warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *Leon,* 104 S.Ct. at 3421–22.

In the present case, the majority does not hold, and I find no indication, that any of these four conditions is present. There is no evidence that Inspector George was dishonest or reckless in preparing the affidavit, nor that the magistrate abandoned his detached and neutral role in issuing the warrant. The issuing magistrate and the District Court in this case both concluded, as have we, that the affidavit established probable cause; thus, we clearly cannot say that the affidavit was " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *Leon,* 104 S.Ct. at 3422 (quoting *Brown v. Illinois,* 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265–66, 45 L.Ed.2d 416 (1975)). Nor was the warrant so facially deficient that the postal inspectors executing the warrant could not reasonably have believed it to have been valid. Indeed, in Part II of the Court's opinion we have held that the warrant validly authorized a search for stolen mail.

Instead of analyzing the objective reasonableness of the search in the present case on the basis of the four *Leon* factors, however, the Court conducts a more general inquiry into the objective reasonableness of the search. Essentially, the Court concludes that the postal inspectors could not have believed they did not exceed the scope of the search they were permitted by the warrant because neither the warrant nor the affidavit contains a sufficiently particularized list of the items to be seized. I do not dissent from this more general inquiry since I believe, as indicated by the nature of the inquiry undertaken by the Supreme Court in *Sheppard,* the four factors articulated in *Leon* are merely illustrative of the inquiry a reviewing court must undertake to determine whether an objectively reasonable basis existed for the search actually

undertaken by government agents. But I believe the Court errs in concluding that the same lack of particularity of the descriptions of the household items in the warrant and affidavit that requires us to hold that the seizure of the household items violated the Fourth Amendment also demonstrates the lack of an objectively reasonable belief on the part of the postal inspectors that they were conducting precisely the search the magistrate had authorized them to conduct.

First and foremost, I note that in the present case, a United States District Judge conducted a *de novo* review of the question we now consider. He concluded that "the items seized did not exceed the permissiveness of the search or violate the defendant's Fourth Amendment rights." *United States v. Strand,* No. 3–83 Cr. 69 (D.Minn. July 27, 1983) (order of District Court affirming decision of magistrate and denying defendant's motion to suppress). While I concur with my brethren in concluding *as a matter of law* that the District Judge erred in so holding, I find the fact that he so concluded remarkably strong evidence for the proposition that the postal inspectors could have had an objectively reasonable basis for reaching the same conclusion. I cannot join a holding that would require postal inspectors to be more sophisticated judges of Fourth Amendment jurisprudence than our own District Court Judges.

I do not, however, rely on the District Court's ruling alone for my conclusion that the postal inspectors had an objectively reasonable basis for believing that they were conducting only the search they were authorized to conduct. An examination of the evidence that convinced the District Court the postal inspectors acted, as a matter of law, within the scope of their warrant convinces me that the postal inspectors had an objectively reasonable basis for believing that they were authorized to seize the household items they actually seized.

Inspector George had applied for a warrant on the basis of an affidavit that listed a number of household items believed by him to have been stolen by Strand from the mail. The last paragraph of his affidavit states that:

Your affiant, from the above information, has reason to believe that *the above merchandise* and outgoing mail from the post offices located on the star route is evidence of the possession of stolen mail matter by Paul Rogers and Anna Strand (18 U.S.C. 1708) and believes the *merchandise from the parcels* and some of the mail can reasonably be expected to be in the home of Paul Rogers and Anna Strand at 260 Broadway Street East, Apt. 4, New Germany, Minnesota. (emphasis added).

The magistrate examined the affidavit and then issued a warrant directing postal inspectors to seize "stolen mail." The warrant referred to the affidavit, even though, as we have held in Part II of this opinion, as a matter of law, the warrant did not incorporate the affidavit. Clearly, Inspector George reasonably could have believed that the term "stolen mail" as used in the warrant authorized him to seize those items of merchandise that he had described in his affidavit as having been stolen from the mail. Indeed, I have some difficulty in seeing how he reasonably could have thought otherwise. In his affidavit, Inspector George had specifically referred to the missing merchandise as "stolen mail matter," and the magistrate had issued a warrant authorizing him to seize the "stolen mail." We should "refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and action, that the warrant he possesses authorizes him to conduct the search he has requested." *Sheppard,* 104 S.Ct. at 3429.

I find further evidence of the objective reasonableness of the search in the fact that Postal Inspector George, the officer who had submitted the affidavit and therefore knew what particular merchandise had been reported by postal customers as missing, personally supervised the search of the Strand/Rogers apartment. *See id.* at 3429 n. 6 (officer who directed the search knew what items were listed in the affidavit

presented to the judge and had good reason to believe that the warrant authorized the seizure of those items). This is simply not a case where a group of officers who were unfamiliar with the meaning ascribed to the term "stolen mail" by the officer/affiant and the magistrate started seizing ordinary household items in an unrestrained seizure of personal effects. A copy of the affidavit accompanied the warrant and items were compared to the affidavit in Strand's presence.

The opinion of the Court properly notes that the postal inspectors also seized a number of items that were listed in a separate document that accompanied the inspectors during the search. Some of these items had come to the inspectors' attention as having been reported missing from Strand's mail route only after the affidavit was submitted, and therefore were not listed in the affidavit. It seems quite clear to me that to the inspectors the items listed in the affidavit and in the additional document all were encompassed by the term "stolen mail," and they already had in their possession a warrant, based upon an affidavit listing similar household items, authorizing them to search for "stolen mail." Under these circumstances, I cannot say that the inspectors' reliance on the warrant as including all listed items reported as missing within the term "stolen mail" was not objectively reasonable.

Even were I to join the Court in holding that items seized as "stolen mail" by reference to a list not presented to the magistrate should be excluded, I still do not believe Strand's conviction on Count I should be reversed. At least two of the items seized—a yellow flower pattern antique china butter plate and some Vivian Woodard cosmetics—were specifically listed in the affidavit and are set forth as stolen articles in Count I of the indictment. The butter plate was described about as particularly as such an item can be described by anyone not especially versed in antique china. Even if *all* the other household items should have been suppressed, surely under *Leon* and *Sheppard* the seizure of the butter plate was objectively reasonable. This piece of evidence alone is sufficient to support Strand's conviction on Count I.

I also believe that our case law would permit the postal inspectors in the present case to have formed the objectively reasonable belief that, on the basis of the warrant they had been issued, they were entitled to seize merchandise that had been reported as missing by postal customers. This Circuit has held that "[i]f the warrant itself was not so broad as to constitute a general search, then an item not mentioned in the warrant may be seized if the item is reasonably related to the crime for which the warrant issued." *Taylor v. Minnesota*, 466 F.2d 1119, 1121 (8th Cir.1972), *cert. denied*, 410 U.S. 956, 93 S.Ct. 1425, 35 L.Ed.2d 689 (1973). We have held in this case that the warrant did authorize the seizure of letters and packages; while we also have held that the warrant as issued was not sufficiently particular to support the seizure of the household items, we reversed a District Court in so doing. If a case decided in this Circuit permits a governmental agent to seize an item not mentioned in a warrant as long as the item is related to the crime for which the warrant issued, and if the postal inspectors in the present case were validly authorized to search for stolen mail (as we have held), I find it hard to conclude that the postal inspectors could not have had an objectively reasonable basis, grounded in the law of this Circuit, for believing they could seize additional items that also had been reported to them as being stolen from the mail and therefore were closely related to the crime for which the warrant had issued.

Finally, I note that the basis for the *Leon* and *Sheppard* decisions was that excluding the evidence seized in those two cases would in no way have enhanced the deterrent function of the exclusionary rule. Similarly, I do not believe that excluding the household items seized from the Strand/Rogers apartment in the present case would serve the exclusionary rule's deterrent function. The postal inspectors had established probable cause and they

had a valid warrant to enter the apartment and search for stolen mail. Their conduct in executing the warrant was in no way outrageous or in any way unreasonable. The Fourth Amendment transgression that occurred is highly technical and entirely the result of an innocent mistake—one so subtle that the District Court failed to perceive it. I conclude that the household items seized are admissible under the *Leon-Sheppard* doctrine, and thus I would affirm Strand's conviction on Count I.