83 F.3d 430
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Offiong Eniang OFFIONG, Patricia Archey a/k/a Pat Archey,
Defendants-Appellants.
 Nos. 95-50179, 95-50247.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 7, 1996.
Decided April 23, 1996.
 
 Before: CANBY, BOOCHEVER, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Offiong Eniang Offiong appeals his convictions and sentence for conspiracy in violation of 18 U.S.C. § 371 and possession of fifteen or more unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3). Pat Archey, a co-defendant and co-conspirator, appeals her convictions for conspiracy, possession of fifteen or more unauthorized access devices, and wire fraud in violation of 18 U.S.C. § 1343. We have jurisdiction under 28 U.S.C. § 1291. We affirm Archey's and Offiong's convictions. We vacate Offiong's sentence and remand for resentencing because the district court may have improperly attributed to Offiong the losses from all of the access devices found in Archey's possession.
 
 I. ARCHEY'S CONVICTION
 
 3
 Archey argues that her convictions for conspiracy, wire fraud, and possession of unauthorized access devices were not supported by sufficient evidence of knowledge. After reviewing the evidence in the light most favorable to the prosecution, we decide whether any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.[1] United States v. Foster, 57 F.3d 727, 729 (9th Cir.1995).
 
 
 4
 The Government introduced substantial circumstantial evidence from which Archey's intentional participation could be inferred. See Foster, 57 F.2d at 729. An agent obtained lists of credit card numbers from the computer in Archey's office, and several computer printouts of these lists, found in a box in the office, had handwritten notes regarding the credit limits and available credit for the listed accounts. Agents also found in Archey's office a handwritten list of Bank Identification Numbers (BIN), with the names "Ete" and "Mo" (which other evidence established as names for Offiong and Offiong's complicit roommate Mohammed, respectively) written at the top. A similar handwritten list, with "Ete to Pat" written at the top, was found in Offiong's apartment.
 
 
 5
 There also was evidence that Archey knew that the credit report orders she placed with reselling companies had precipitated consumer complaints about unauthorized credit checks, and knew that these problems caused the resellers to terminate her accounts with them. In light of the fact that there was no evidence to suggest that Archey was legitimately in the business of selling credit reports to a large clientele, a reasonable trier of fact could infer that she knew that the credit report authorizations she received from Offiong and Mohammed were fraudulent.
 
 
 6
 Archey contends that many of the documents found in her office were her husband's, and argues that the fact that at least one of the fraudulent credit reports was ordered from her FAX machine while she was away on a trip establishes that her husband, without her knowledge, was the one involved in the fraud. She also points out that incriminating documents found in the heater vent did not have her fingerprints on them.
 
 
 7
 "The government's evidence need not exclude every reasonable hypothesis consistent with innocence in order to satisfy [its] burden." United States v. Arias-Villanueva, 998 F.2d 1491, 1503 (9th Cir.), cert. denied, 114 S.Ct. 573 (1993). A rational trier of fact could have concluded, beyond a reasonable doubt, that Archey knew of the fraud and intentionally participated along with her husband. Similarly, a rational trier of fact could have concluded that Archey knew that Offiong and Mohammed were using the reports for fraudulent purposes because of the complaints that she received from the reselling companies and the termination of her accounts. The lists of BIN numbers found in both apartments, and the handwritten names and notes regarding credit balances, also support a finding that Archey knowingly participated in the scheme.
 
 
 8
 We affirm Archey's convictions because the circumstantial evidence and inferences drawn therefrom would have permitted a rational trier of fact to find the element of knowledge beyond a reasonable doubt. See Foster, 57 F.3d at 729.
 
 II. OFFIONG'S CONVICTIONS AND SENTENCE
 A. The Search Warrant
 
 9
 Offiong argues that when Detective Staal prepared and presented his warrant application based on Mohammed's activities, he knowingly or recklessly omitted the fact that Mohammed had not lived at the apartment for at least three weeks.
 
 
 10
 Offiong's claim is without merit. Staal questioned the apartment manager the day before he applied for the warrant, and was informed that Mohammed lived in apartment 303. The maintenance supervisor did not tell Staal that Offiong had been the sole resident of the apartment for the previous three weeks until November 3, 1993, almost two weeks after Staal obtained the warrant. The district court's determination that Staal did not improperly omit information in his warrant application was not clearly erroneous.
 
 
 11
 Offiong argues that the search warrant did not properly incorporate the affidavits, Statement of Probable Cause, and the attached investigation reports. This claim similarly is without merit because the search warrant expressly incorporated the affidavit and statement of probable cause in several places.[2]
 
 
 12
 Offiong also contends that the warrant was overbroad in light of the suspected criminal activity, and that it was not sufficiently particularized. The inclusion of credit cards among the items authorized to be seized did not render the warrant overbroad, however, because credit cards in an assumed name were found in an apartment that Mohammed previously inhabited with a roommate. These credit cards, mentioned in the documents submitted with the warrant application, suggest that criminal activity involving credit cards may have been afoot. The district court did not clearly err in finding that there was probable cause to search for credit card evidence. See United States v. Schmidt, 947 F.2d 362, 371 (9th Cir.1991) (finding of probable cause is reviewed for clear error).
 
 
 13
 The Government concedes that one part of the warrant--that authorizing the seizure of "firearms, ammunition, weaponry-related equipment, and any narcotics, paraphernalia, measuring or packaging implements"--was overbroad and beyond the scope of the probable cause. However, no such items were seized. Because the valid part of the warrant was not relatively insignificant compared to the invalid part, and the warrant was not so facially overbroad as to preclude reasonable reliance by executing officers, the district court properly found that the evidence seized pursuant to the valid part of the warrant need not be suppressed. See United States v. Kow, 58 F.3d 423, 428 (9th Cir.1995); United States v. Clark, 31 F.3d 831, 836 (9th Cir.1994), cert. denied, 115 S.Ct. 920 (1995).
 
 
 14
 We also conclude that the warrant was sufficiently particularized. The affidavit limited the search for documents and receipts to those "tending to establish identity," and to personal property which tends "to establish the true and false identities of the person(s) in control of the premises." Because Mohammed's use of false identities to rent apartments and obtain drivers licenses is undisputed, this limitation, although not particularly narrow, clearly is related to the suspected criminal activity. See Kow, 58 F.2d at 427-28. Staal's affidavit also included references to the applicable statutes. See id. at 427.
 
 
 15
 We affirm the district court's denial of Offiong's motion to suppress.
 
 B. Acceptance of Responsibility
 
 16
 Offiong challenges the district court's denial of a downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) (1994). We review for clear error the district court's denial of the downward adjustment. United States v. Vance, 62 F.3d 1152, 1157 (1995).
 
 
 17
 The district court did not err in denying Offiong a two-level downward adjustment for acceptance of responsibility.[3] The record supports the probation officer's conclusion that Offiong "denied essential elements of the offense." Documents with Offiong's name found in Archey's office, Archey's testimony at trial, and the contents of the briefcase all belie his contention that his participation was tangential. The Government also introduced evidence that Offiong had made large cash expenditures despite the fact he was unemployed, refuting Offiong's contention that he received minimal financial benefit from the scheme.
 
 
 18
 Offiong's contention that he merely denied evidence of "other criminal conduct" is without merit. Offiong denied some of the conduct that constituted the convicted offense, and minimized his role in the fraud despite evidence that he was a knowing participant who received substantial financial benefit. The district court's denial of the downward adjustment under § 3E1.1(a) therefore was not clearly erroneous. See U.S.S.G. § 3E1.1, Application Note 1(a); see also United States v. Ramos, 923 F.2d 1346, 1360 (9th Cir.1991) (defendant's minimizing of involvement in convicted offense supported the denial of a downward adjustment).
 
 C. Aggregation of the Losses
 
 19
 Offiong argues that when the district court calculated his offense level, it should have included only the $200,000 of losses associated with the accounts with which he had contact.[4] We review de novo the district court's legal interpretation of the Sentencing Guidelines, and review for clear error the district court's determination that certain conduct was in furtherance of a joint venture and reasonably foreseeable to Offiong. United States v. Sanchez, 967 F.2d 1383, 1384-85 (9th Cir.1992).
 
 
 20
 The district court applied U.S.S.G. § 2F1.1 (1994) to Offiong's convictions, arriving at a base offense level of six. The court was required to increased Offiong's offense level according to the amount of loss that resulted from the fraud. U.S.S.G. § 2F1.1. Because the case involved a jointly undertaken criminal activity, the district court had to calculate Offiong's specific offense characteristics (the total loss involved) "on the basis of ... all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a). Offiong thus was accountable for the conduct of others that was "both: (i) in furtherance of the jointly undertaken criminal activity; and (ii) reasonably foreseeable in connection with that criminal activity." Id., Application Note 2.
 
 
 21
 The presentencing report states that 3,603 access devices were collectively possessed by the defendants, with a total reported loss of $537,153.26 for all of the devices. The majority of these devices were found in Archey's possession. However, the report does not match up particular losses with the particular access devices in each defendant's possession. Offiong contends that only $200,000 of losses are attributable to the accounts with which he had contact.[5]
 
 
 22
 The Government assumes that all of the actual and intended losses were linked to account numbers with which Offiong or Mohammed had contact. There is no evidence in the record to support this assumption. The presentencing report indicates that the $537,153.26 of reported losses were spread among 1,056 device numbers, and that a substantial portion of these losses were linked to account numbers found in Archey's possession. The additional $254,700 of intended loss that the sentencing court added into the calculation necessarily included imputed losses for access devices that Archey, but not Offiong, possessed.
 
 
 23
 Evidence on the record indicates that Archey sold credit reports to other clients in addition to Offiong and Mohammed. She testified that she also sold reports to a person named "Gozie," for whom she did not manage property. Thus, some of the reported losses may have been inflicted by other clients to whom Archey sold fraudulently obtained credit reports.
 
 
 24
 Defendants who are part of "hub and spoke" conspiracies are not necessarily liable for the conduct of the entire enterprise. See U.S.S.G. § 1B1.3, Illustration (c)(6). Offiong is only liable for losses attributable to him or to others with whom he agreed to engage in a jointly undertaken criminal activity. Id. If Archey supplied reports to others with whom Offiong did not conspire, Offiong is liable only for reported and imputed losses attributed to his own or Mohammed's possession of particular access devices.
 
 
 25
 The sentencing court did not make any specific findings to support its determination that the entire loss from all of the access devices was attributable to Offiong. Offiong's mere knowledge that other clients bought fraudulently obtained reports from Archey, without more, does not warrant aggregation of the losses from all of the access devices in Archey's possession. See United States v. Studley, 47 F.3d 569, 573-76 (2d Cir.1995) (defendant who participated in fraudulent telemarketing scheme alongside roomful of others participating in same scheme was not necessarily liable under § 1B1.3 for losses inflicted by other telemarketers; absent a finding of an agreement to undertake jointly criminal activity with the others, knowledge of entire enterprise was not sufficient for aggregation of all losses); U.S.S.G. § 1B1.3, Illustration (c)(7) (defendant liable only for specified amount of cocaine he agreed to distribute, even if he knew the person with whom he agreed was the central figure in conspiracy involving much larger amounts).
 
 
 26
 Because the presentencing report does not break down the losses attributable to each access device or establish that Offiong jointly participated in criminal activity relating to account numbers he did not obtain from Archey, and the district court did not make specific findings in this regard, we vacate Offiong's sentence and remand for resentencing.
 
 D. Due Process Claim
 
 27
 Finally, Offiong argues that the district court's application of U.S.S.G. § 2B1.1, Application Note 4, which establishes a presumption of $100 of intended loss per access device, violates due process. We need not reach this claim. The issue may become moot if the district court, at resentencing, finds that the access devices to which it originally applied the $100 presumption were not part of the conspiracy for which Offiong is liable. Alternatively, if the district court only attributes part of the intended loss to Offiong, the application of the presumption may have no effect on the offense level.[6]
 
 III. CONCLUSION
 
 28
 We affirm Archey's and Offiong's convictions. We also affirm the district court's denial of a downward departure for Offiong's acceptance of responsibility. We vacate Offiong's sentence and remand for resentencing because the district court may have improperly aggregated the losses from all of the access devices.
 
 
 29
 No. 95-50247: AFFIRMED.
 
 
 30
 No. 95-50179: CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 The essential elements of conspiracy are: 1) an agreement to accomplish an illegal objective; 2) one or more acts in furtherance of the illegal purpose; and 3) the requisite intent to commit the underlying substantive offense. See United States v. Becker, 720 F.2d 1033, 1035 (9th Cir.1983). The essential elements of wire fraud are: 1) intentional participation in a scheme to defraud or to obtain money or property by means of false representations, pretenses, or promises; and 2) knowing use of interstate or foreign wire communications in furtherance of the scheme. See 18 U.S.C. § 1343; United States v. Lothian, 976 F.2d 1257, 1262 (9th Cir.1992). The elements of the crime of possession of unauthorized access devices are: 1) knowing possession of fifteen or more unauthorized access devices; 2) knowledge that the or access devices were unauthorized; 3) acts undertaken with the intent to defraud; and 4) out-of-state access devices. See 18 U.S.C. § 1029(a)(3); United States v. Rushdan, 870 F.2d 1509, 1513-14 (9th Cir.1989)
 
 
 [2]
 Offiong's reliance on United States v. Strand, 761 F.2d 449 (8th Cir.1985), is misplaced. In Strand, the Eighth Circuit held that a warrant stating that "affidavits have been made" and "grounds for application for issuance of the search warrant exist as stated in the supporting affidavit(s)" was not sufficient to incorporate the affidavits, but noted that a warrant that was for the search and seizure of drug paraphernalia and currency "as described in the affidavit" had sufficiently incorporated the affidavit. Id. at 453. This Circuit has implied that the phrase "see attached affidavit," typed on the search warrant, would be sufficient to incorporate an affidavit. See United States v. Luk, 859 F.2d 667, 677 (9th Cir.1988)
 
 
 [3]
 Because we conclude that Offiong did not qualify for the two-point reduction, we need not reach the issue of the additional, third point. See U.S.S.G. § 3E1.1(b)
 
 
 [4]
 If Offiong were only liable for $200,000 of losses, the offense level under section 2F1.1 would have increased seven, rather than ten, points
 
 
 [5]
 It is not clear whether Offiong includes in his calculation accounts that Mohammed used. The evidence would permit a finding that Offiong was responsible for those accounts
 
 
 [6]
 We note that if the entire $537,153.26 of reported loss was properly attributable to Offiong, Offiong's offense level would have been the same whether or not the sentencing judge added the $254,700 of intended loss. Offiong's offense level would have increased ten points even without the intended loss addition because the 10-point increase applied to a loss range of between $500,001 and $800,000. See U.S.S.G. § 2F1.1(b)(1) (1995)